# STATE OF MICHIGAN

# COURT OF APPEALS

In re TAYLOR, Minors.

UNPUBLISHED
July 11, 2017

No. 334629
Wayne Circuit Court
Family Division
LC No. 14-516314-NA

AFTER REMAND

Before: SAWYER, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

This case returns to us following remand to the trial court for further consideration of the best interests of two of the three minor children at issue in this appeal, MET and MST. Having reviewed the trial court's best-interest determination on remand, we affirm.

In our earlier opinion, we summarized the factual background of this case and concluded that the trial court properly found that statutory grounds for termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j) had been established by clear and convincing evidence. *In re Taylor*, unpublished opinion per curiam of the Court of Appeals, issued April 18, 2017 (Docket No. 334629), pp 1-7. However, we remanded this case to the trial court for the limited purpose of considering the effect of MET's and MST's placement with relatives on the court's best-interest analysis. *Id*. at 7-9.

As we discussed in our earlier opinion, under MCL 712A.19b(5), "[t]he trial court must order the parent's rights terminated if the [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted). A trial court's best-interest determination is reviewed for clear error. *Id*., citing MCR 3.977(K).

When it determines the best interests of a child, the trial court should weigh all available evidence, *id*., and the court's focus should be on the child rather than the parent, *In re Moss*, 301 Mich App 76, 86-87; 836 NW2d 182 (2013).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency,

-1-

stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted); see also *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).]

Other relevant factors include the length of time the child has been in foster care or placed with relatives, and the likelihood that "the child could be returned to her parents' home within the foreseeable future, if at all." See *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

At the end of the termination hearing, the trial court concluded that there was a statutory basis for the termination of respondent's parental rights based on respondent's failure to obtain suitable housing; respondent's failure to obtain a legal source of income and financially provide for his children; respondent's failure to actively participate in individual therapy and complete his therapy before the termination hearing; the high likelihood that the children would experience harm, given their special needs, if they were returned to respondent's care; and respondent's consistent history of significant anger issues and domestic violence. The trial court also made the following best-interest findings:

Best interest: I know dad has -- I know dad loves his children. I know he's bonded to them. I think that's clear but your children do need permanency and right now you aren't ready to give it to them and I'm not sure if I want to go on the 15 month to 24 month continue [sic] trek in order to give you enough opportunity to stabilize yourself so that they can be returned to you. I can't see where that's in their best interest. . . . There's no permanency. . . . [Y]ou've got three kids. They all have special needs. They would have to be transported on a regular basis to therapist[s], to medical professionals and that might not be forever but it at least would be long enough . . . . I'm not going to force them to wait any longer.

I do find that it's in the best interest of [MST], and [MET] and [MWT] to terminate your parental rights. . . .

On remand, the trial court again concluded that termination of respondent's parental rights was in the best interests of MST and MET. The court explicitly incorporated by reference its previous best-interest findings, but it also noted particular facts that it found most significant in determining that termination of respondent's parental rights was in the children's best interests despite their placement with relatives. Specifically, the trial court detailed multiple instances in the record demonstrating that defendant failed to benefit from his parenting classes and anger management therapy, including numerous times during which defendant (1) had lashed out, both verbally and physically, against respondent-mother and the relatives caring for the children, and (2) had displayed "belligerent behaviors" in court, at agency locations, and during various meetings. After detailing these events, the Court explained:

The reason that I believe that those reports and the actions that were reported in those reports regarding [respondent] are important in the analysis regarding [MET] and [MST] is what they show is that [respondent] . . . failed to take advantage of what he learned in the parenting classes and in the anger management therapy and he continued to have those problems. He continued to not be able to contain his anger. He continued to lash out when he felt that it was necessary for him to lash out and he also continued to lash out in physical ways.

He, and more specifically, he continued to lash out at the caretakers of [MET] and [MWT]. I believe that's important because the Court of Appeals states . . . that this [c]ourt must explicitly address when termination is appropriate in light of the children's placement with relatives. Well[,] if the children were placed with the relatives and the actions of [respondent] continue to strike fear in those relatives to the point that [relative caregivers] asked for [MET] to be removed from their home after that altercation and for the great aunt who also asked to have [MST] removed from her after an altercation, those . . . were actions that he took upon himself which had an [e]ffect on both [MET] and [MST] at the time and their future.

The trial court reiterated these findings again, concluding:

[T]here's no guarantee that if [respondent's] rights were not terminated that he would not go and physically interfere with the child's placement with [the relatives] so I think that in regarding *Mason*, which the Court of Appeals specifically made reference to, whether termination is appropriate in light of the children's placement with relatives has been breached because if the children were placed with relatives [respondent's] actions in not completing his parenting plan and not addressing his anger management, and not addressing his domestic violence therapy or his individual therapy, he did complete the psychological exam on March 15th but, even with that, it's not enough from this [c]ourt's perspective. [Emphasis added.]

At the end of its findings on remand, the court reiterated, once again, that it was "trying to state on this record that the father's history of violence, the father's history of domestic violence, the father's history of not being able to control his anger is fluid throughout this entire record and it would impact the placement with relatives in a way that has been shown to be negative on this particular record . . . ."

The trial court did not clearly err when it concluded that termination of respondent's parental rights was in the best interests of MET and MST. As the court noted during its original best-interest findings, the record shows that respondent had a strong bond with the children and that he loved his children. However, respondent did not demonstrate lasting improvement in the two years after he established paternity and became involved in the child protective proceedings. The record shows that respondent failed to adequately comply with his case service plan. Although his visitation history with the children had been acceptable, respondent did not have any housing, he only had sporadic income, and he failed to demonstrate that he had benefitted from his parenting classes. Respondent initially participated in individual therapy early in the

proceedings, but services were reordered after respondent exhibited unresolved anger and domestic violence issues. He did not actively participate in individual therapy again until after the termination petition had been filed, and he did not fulfill this requirement prior to the termination hearing. He also failed to undergo a psychological evaluation until after the termination petition had been filed.

Moreover, each child has special needs that require medication or therapy, and the evidence showed that respondent never demonstrated an ability to provide the level of care that his children require. As the trial court noted, the children's special needs require frequent transportation to medical providers and therapists. Likewise, the trial court accurately noted that the children needed permanency, and it reasonably concluded that declining to terminate respondent's parental rights—and, therefore, requiring the children to wait an additional two or three years for respondent to improve—would not be in the children's best interest given their need for stability.

Most significantly in light of the court's findings on remand, the trial court did not clearly err when it concluded that respondent had an extensive, unresolved history of anger issues and domestic violence. Although the court's factual findings on these subjects include a few negligible inaccuracies, its findings are consistent with the overwhelming evidence in the record of respondent's unresolved anger and behavioral issues. Respondent and respondent-mother engaged in considerable domestic violence during the pendency of the child protective proceedings, and respondent was involved in several altercations with the children's relative caregivers.[1] Additionally, it is noteworthy that the children's caregivers were *maternal* relatives, and it is apparent from the record that respondent had a very poor relationship with them.

Therefore, the trial court did not clearly err when it concluded that termination of respondent's parental rights was in MST's and MET's best interests, especially given the evidence that respondent's unresolved issues directly affected the children's relative caregivers on several occasions and contributed to confrontations in the children's presence. See *In re White*, 303 Mich App at 713; *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (explaining when a decision is clearly erroneous). The trial court's best-interest determination, including its express consideration of the children's relative placements, was supported by at least a preponderance of the evidence. See *In re White*, 303 Mich App at 713.

Affirmed.

/s/ David H. Sawyer
/s/ Henry William Saad
/s/ Michael J. Riordan

---

[1] Notably, respondent personally discussed these altercations at length during the January 2016 dispositional review and permanency planning hearing.